UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKIE LENNON and ADAM KUCHYT, | |
| Plaintiffs, | Case No.: |
| v. | [Supreme Court of the State of New York, County of New York Index No. 156948/2023] |
| ANDELA INC., | |
| Defendant. | |

## NOTICE OF REMOVAL

Defendant Andela Inc. ("Andela"), in accordance with (i) 28 U.S.C. §§ 1332, 1441, and 1446 and (ii) Local Civil Rule 81.1, hereby removes this action filed by Plaintiffs Jackie Lennon and Adam Kuchyt in the Supreme Court of the State of New York, County of New York to this Court. In support of this Notice of Removal, Andela states as follows:

***Background***

1.     28 U.S.C. § 1441(a) provides that an action filed in state court may be removed to a federal court having original jurisdiction over such action.

2.     On July 11, 2023, Plaintiffs filed this action in the Supreme Court of the State of New York, County of New York, Index No. 156948/2023. True and accurate copies of the Summons and Complaint (Dkt. No. 1) and the Affidavit of Service (Dkt. No. 2) in that action are attached hereto as <u>Exhibit 1</u>. No other documents have been filed in the action.

3.     Plaintiffs' Affidavit of Service claims that Andela was served with a copy of the Summons and Complaint on July 25, 2023.

4.     This court has original jurisdiction over this action under its diversity jurisdiction because it is an action between "citizens of different States" and the amount "in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1).

*Diversity of Citizenship*

1. "Diversity jurisdiction under 28 U.S.C. § 1332 is proper 'only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217-18 (2d Cir. 2016), *quoting Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). A corporation is a citizen of the state in which it is incorporated and "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

2. Plaintiffs are citizens of New York. Compl. ¶¶ 1, 5.

3. Andela is a Delaware corporation. *See* Declaration of Jeremy Johnson, Andela CEO ("Johnson Decl.") ¶ 2, attached hereto as Exhibit 2; Compl. ¶ 11 (alleging that Andela is a "foreign corporation").

4. A "corporation's place of business under § 1332 is 'the place where a corporation's officers direct, control, and coordinate the corporation's activities.'" *OneWest Bank, N.A., supra*, *quoting Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "In practice, this 'should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Id.* "[A] corporation's principal place of business can be only a 'single' state." *Bartlett v. Honeywell Int'l Inc.*, 737 Fed. Appx. 543, 547 (2d Cir. 2018), *quoting Hertz Corp.*, 559 U.S. at 93.

5. Andela has no principal place of business. Andela operates entirely remotely, with no physical office. Johnson Decl. ¶ 3. Andela formerly had an office in New York but vacated it in April 2020 and has no intention of returning to a physical office. *Id.* ¶ 10.

6. Nevertheless, to the extent that the Andela is required to have a principal place of business for diversity purposes, it is Tennessee, where Andela Co-Founder and CEO Jeremy

Johnson lives.  *Id.* ¶ 4.  From his home in Tennessee, Johnson is the principal decisionmaker for Andela, makes the final decision for Andela on major matters, and directs and controls the company's affairs.  *Id.*  For these reasons, should it be required that the Court assign a principal place of business for the diversity analysis, Andela would most logically be deemed a citizen of Tennessee. *See Zurich Am. Life Ins. Co. v. Nagel,* 2021 WL 3077861, at *3 (S.D.N.Y. July 20, 2021) (presence of specific "high-level" officers sufficient to establish the state as the principal place of business); *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 607 (S.D.N.Y. 2015) (for diversity purposes, corporation was citizen of state where "[t]he bulk of the direction, control, and coordination" of activities took place); *Protostorm, Inc. v. Foley & Lardner LLP*, 2019 WL 4094882, at *5-6 (E.D.N.Y. Aug. 29, 2019) (for diversity purposes, corporation was citizen of state where high-level decisions were made, not where headquarters was located); *Aizen v. Am. Healthcare Admin. Servs., Inc.*, 2019 WL 4686811, at *6 (D.N.J. Sept. 26, 2019) ("virtual" companies, with "employees and executives… spread out across the country rather than centralized in a particular location," were citizens of state where President/CEO lived and "directed, controlled, and coordinated both companies' corporate activities").

7.      Andela has insufficient connections to New York to render the state its principal place of business.  In addition to Johnson, Andela has eight other executives, only one of whom lives in New York.  Johnson Decl. ¶ 5.  The remaining executives live in Texas (2), Florida (2), Brazil, Massachusetts, and North Carolina.  *Id.*

8.      Andela also has eight Board Members, none of whom live in New York.  *Id.* ¶ 8.

9.      From his home in Tennessee, Johnson communicates regularly with the executives and Board Members via email, video and telephone calls, and text messages for purposes of directing the company and making major decisions.  *Id.* ¶¶ 6, 8.

10.     Andela has no regular in-person meetings among its executives or Board Members at any specific or regular physical location.  *Id.* ¶ 9.

***Amount in Controversy***

11.     Plaintiffs' Complaint alleges nine causes of action for various alleged violations of New York and New York City employment discrimination and pay laws, N.Y. Lab. Law §§ 194, 215, N.Y. Exec. Law § 296, N.Y. Code § 8-107, as well as common law claims for breach of contract or quantum meruit in the alternative.

12.     The gravamen of Plaintiffs' Complaint is that Lennon and Kuchyt had the same job for Andela, Enterprise Client Partner, but that Kuchyt was paid $26,000 more than Lennon in base salary and bonuses.  Plaintiffs allege that the wage differential was because Lennon is female and Kuchyt is male.  Further, Lennon alleges that she was the subject of sex discrimination and constructively discharged as a result.  Kuchyt, for his part, alleges that he was terminated in retaliation for supporting Lennon and her claims.  Finally, both Lennon and Kuchyt claim they are owed unpaid commissions.

13.     On various counts, Plaintiffs seek damages for "back pay, front pay in lieu of reinstatement, compensatory including mental anguish/garden variety emotional distress and punitive damages, interest, attorneys fees and costs."  *See* Compl. at Prayer for Relief.  Plaintiffs also seek "contractual damages or their respective unpaid commissions and bonuses earned."  *Id.*, ¶ J.  Finally, Lennon individually seeks "to recover her wage differential and liquidated damages of 300% of the wage differentials, interest, attorneys fees and costs."  *Id.*, ¶ B.

14.     The $75,000 jurisdictional threshold is easily met without even considering the totality of Plaintiffs' claims.

15.     To calculate Lennon's alleged wage losses just as compared to Kuchyt, it is necessary to consider the term of her employment.  She was employed by Andela from March 29, 2021 to September 1, 2022, Compl. ¶ 2, or approximately 17 months.  Kuchyt was employed by Andela from March 29, 2021 to May 12, 2023.  *Id.* ¶ 6.  On an annual basis, Lennon alleges that she was illegally paid $26,000 less than Kuchyt, or $2,166.67 on a monthly basis.  Over 17 months, Lennon thus alleges she was paid $36,833.33 less than Kuchyt (17 x $2,166.67).  Lennon seeks to recover this amount, plus three times this amount in liquidated damages, *id.* ¶ 62, for a total of $147,333.33.

16.     Next, Lennon alleges that she is owed $46,803 in unpaid commissions.  *Id.* ¶ 26.

17.     Further, the United States Court of Appeals for the Second Circuit has held that "[a]ttorneys' fees may be used to satisfy the amount in controversy… if they are recoverable as a matter of right pursuant to a statute or contract."  *Kimm v. KCC Trading, Inc.*, 449 Fed. Appx. 85, 85-86 (2d Cir. 2012).  Some of the statutes at issue in this case, N.Y. Lab. Law §§ 198, 215, provide for the recovery of "reasonable attorneys' fees."  Using a conservative rate of $350 per hour, and a conservative estimate of 150 hours to resolve this case, Plaintiffs are likely seeking at least $52,500 in attorneys' fees ($350/hour x 150 hours).

18.     Plaintiffs also seek to recover "punitive damages."  Although Andela vigorously denies Plaintiffs' allegations and that they are entitled to any damages, let alone punitive damages, if Plaintiffs were to prevail, punitive damages alone could exceed the $75,000 jurisdictional minimum.

19.     Applying the above-described calculations, the total amount in controversy is well in excess of $75,000.

***No Admission***

20.     Andela does not concede in any way that the allegations in the Complaint or any other pleading discussed above are accurate, nor does Andela concede that Plaintiffs are entitled to any compensatory or statutory damages, unpaid wages or commissions, punitive damages, attorneys' fees, or any other relief.

***Procedural Matters***

21.     Andela's Notice of Removal has been filed within thirty days of service of the Complaint and is therefore timely.  *See* 28 U.S.C. § 1446.

22.     Copies of this Notice of Removal, as well as a Notice of Filing of Notice of Removal, have been sent to Plaintiffs' counsel and are being filed with the Supreme Court of the State of New York, New York County, on this date.

WHEREFORE, Andela removes this action to the United States District Court for the Southern District of New York.

Respectfully submitted,

CONSTANGY, BROOKS,
SMITH & PROPHETE LLP

Dated:  August 14, 2023

*/s/ David C. Kurtz*
David C. Kurtz
Christopher R. Deubert
535 Boylston Street, Suite 902
Boston, MA 02116
Telephone: (617) 849-7880
Facsimile: (617) 849-7870
dkurtz@constangy.com
cdeubert@constangy.com

*Attorneys for Defendant Andela Inc.*

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

Jackie Lennon and Adam Kuchyt,            Index No.

                 Plaintiffs,            **SUMMONS**

        -v-                    Venue is based on residence of
                                    Defendant

Andela Inc.,

                 Defendants.

-------------------------------------------------------------------x

**TO THE ABOVE NAMED DEFENDANT**:

       **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the County of New York at the office of the Clerk of the said Court located at 60 Centre Street, New York, NY, 10007 within the time provided by law as noted below and to file your answer to the annexed complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the relief demanded in the Complaint, together with costs of this action.

Dated: New York, NY
       July 11, 2023

                          Nisar Law Group, PC

                                 _Susan Ghim_

           BY:      Susan Ghim, Of Counsel
                     60 East 42nd Street, Suite 4600
                     New York, NY 10165
                     (646) 403-1011
                     SGhim@Nisarlaw.com

*This Summons and Verified Complaint and the papers on which it is based, are certified pursuant to Section 130-1.l-a of the rules of the Chief Administrator (22 NYCRR).*

**NOTE: The law provides as follows:**
**(a) If this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY (20) days after such service; or**

**(b) If this summons is served by delivery to any person other than personal delivery to you within the City of New York; or if the summons is served outside of the city of New York, you are allowed THIRTY (30) days after the proof of service is filed with the Clerk of this Court within which to appear and answer.**

1

**TO DEFENDANT:**

Andela Inc.
580 Fifth Avenue, Suite 820
New York, NY 10036
Attn: Jeremy Johnson, CEO

Case 1:23-cv-07154  Document 1  Filed 08/14/23  Page 10 of 45

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

Jackie Lennon and Adam Kuchyt,                            Index No.

                          Plaintiffs,          **VERIFIED COMPLAINT**

              -v-

Andela Inc.,

                          Defendants.

-------------------------------------------------------------------x

        Plaintiffs Jackie Lennon ("Lennon") and Adam Kuchyt ("Kuchyt") (collectively, "Plaintiffs") by and through their attorneys the Nisar Law Group, PC complaining of Defendant Andela, Inc ("Andela" or "Defendant) allege as follows:

<u>NATURE OF THE ACTION</u>

        Plaintiff Lennon brings this action against Andela Inc. pursuant to New York Labor Law §194 for differential in rate of pay (lesser wage rate than male counterparts) because of her protect class status as a woman and Plaintiff Kuchyt brings this action against Defendant for wrongful discharge in retaliation under NYLL §215 for engaging in protected activity and / or assisting Plaintiff Lennon with her NYLL §194 claim.  Pursuant to NYS Human Rights Law §296 et seq., Plaintiff Lennon additionally brings claims against Andela Inc. of sex discrimination and harassment, hostile work environment, and constructive discharge and Plaintiff Kuchyt brings a retaliation claim for his wrongful termination for engaging in protected activity and / or assisting Plaintiff Lennon with her claims.   Both Plaintiffs further make additional claims against Andela Inc. to recover their earned but unpaid commissions and bonuses under the New York State

3

common law theory of contracts or in the alternative, the common law theory of quantum meruit to avoid unjust enrichment.

<u>The Parties and Factual Allegations</u>

<u>The Plaintiffs</u>

1.      Plaintiff Jackie Lennon ("Lennon") was at all relevant times a resident of the State of New York, County of Westchester.

2.      Plaintiff Lennon was employed by Defendant Andela Inc. as an Enterprise Client Partner during the time period on or about March 29, 2021 to on or about September 1, 2022 when Plaintiff Lennon terminated her employment with Defendant.

3.      The duties or responsibilities of an Enterprise Client Partner entailed procuring and maintaining software engineering service contracts.

4.      Pursuant to an employment offer letter dated on or about March 8, 2021, Plaintiff Lennon was at all relevant times an at will remote employee and paid an annual salary rate of $150,000, an annual bonus of $24,000 paid in quarterly amounts of $6,000 and 5% commissions of net revenue for closed deals originated by Plaintiff Lennon.

5.      During the relevant time period of his employment, Plaintiff Adam Kuchyt ("Kuchyt") was a resident of Placentia, California.   Currently Plaintiff Kuchyt resides in the State of New York, Westchester County.

6.       Plaintiff Kuchyt was employed by Defendant Andela Inc. as an Enterprise Client Partner during the time period on or about March 29, 2021 to on or about May 12, 2023, the date of termination of Plaintiff's employment.

7.      Pursuant to an employment offer letter dated on or about February 19, 2021, Plaintiff Kuchyt was at all relevant times an at will remote employee and paid an annual salary rate of

4

$160,000, an annual bonus of $40,000 paid in quarterly amounts of $10,000 and 5% commissions of net revenue for closed deals originated by Plaintiff Kuchyt.

8.     NYLL §191(c) states in relevant part, "A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once a month in which they are earned; …bonuses …may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan."

9.     At the relevant times of Plaintiffs' respective hire as an enterprise client partner by Andela Inc, which was the same date, on or about March 29, 2021, both Plaintiffs had similar or comparable executive sales credentials including experience and education applicable to the enterprise client partner position.

10.    Notwithstanding the similar work experience and education at the time of their hire, Plaintiff Lennon's annual salary rate was approximately $10,000 less than Plaintiff Kuchyt, and Plaintiff Lennon's annual bonus was approximately $16,000 less per year than Plaintiff Kuchyt.

The Defendant

11.    Based upon information and belief, Andela Inc. ("Andela") is a foreign corporation doing business in New York, with United States headquarters office located at 580 Fifth Avenue, Suite 820, New York, NY 10036.

12.    Based upon information and belief, Andela provides software engineering services to global corporate clients.

13.    Based upon information and belief, Jeremy Johnson is the Chair Executive Officer of Andela.

14.    Based upon information and belief, Sachin Bhagwata ("Bhagwata") was the vice president

of Andela's US Enterprise division located in New York county, New York.

15.     Based upon information and belief, supervisor Bhagwata determined or had significant influence in hiring and determining both Plaintiffs' salary and bonus and rates at the time of their respective hire.

16.     Based upon information and belief, supervisor Bhagwata was aware or had corporate knowledge that both Plaintiffs possessed similar or equivalent experience and education relevant to the Enterprise Client Partner position.

<u>Defendant's hostile work environment toward Plaintiff Lennon and discharge of Plaintiffs.</u>

17.     During the relevant times of their employment with Defendant Andela Inc., Plaintiff Lennon and Plaintiff Kuchyt directly reported to Sachin Bhagwata, vice president of Enterprise.

18.     During the relevant time period of Plaintiff Lennon's employment, her supervisor Bhagwata created and maintained a hostile work environment based on Plaintiff Lennon's female sex/gender by regularly demeaning her before male colleagues with derogatory narratives that Plaintiff was passive, unmotivated, slow and less capable than her male counterparts.

19.     For instance, during the relevant time period of Plaintiff Lennon's employment, one instant messaging string involved Bruce Tizes and Dana Wolfe. Mr. Bhagwata stated, "I don't want to operate in JST (Jackie Standard Time) Let's move quickly." Dana Wolfe replied in Plaintiff Lennon's defense, "…we have a lot of A/R issues… I don't think this is just a CP issue."

20.     Mr. Bhagwata stated in another message string to Dana Wolfe and Jason, "Jackie is clearly not interested or too busy to handle this. Can you guys jump on this?" Dana Wolfe replied in defense of Plaintiff Lennon again, "Jackie and I have connected every day during the offsite on this – she's fully engaged with both myself and Jason, and myself with Bruce you both…"

21.     Another message string by Mr. Bhagwata started, "Why are you entering late churn?" Ms. Lennon replied in relevant part, "It's entered for today because the engineer cannot be located. He

6

hasn't been going to work and the people team and Geoffrey and I cannot get ahold of him." Mr. Bhagwata continued to blame Ms. Lennon for the lack of work performance by other male employee(s) and despite the fact it was not within her control, Bhagwata baselessly chastised, "You are talking as if all of this is new to you. This nonsense needs to stop. Let's take our jobs seriously Very disappointed."

22.     As a result of supervisor Bhagwata's repeated harassment and personal attacks against Plaintiff Lennon in front of male employees, Plaintiff Lennon suffered mental anguish, anxiety, stress, lack of sleep, and a loss of enjoyment of life

23.     On or about August 12, 2022, Plaintiff Lennon was constructively discharged as she was provided with the choice of resignation or termination from her employment with Defendant Andela effective on or about September 1, 2022.

24.     But for Plaintiff Lennon's female sex, she would not have received negative evaluations, harassed, deprived of work opportunities, constructively discharged and paid her earned commissions and bonuses.

25.     But for Plaintiff Lennon's female sex, a hostile work environment would not have been created and maintained against her to deprive her of her earned wages, work opportunities and constructively discharged.

26.     In an email dated on or about August 12, 2022 concerning Plaintiff Lennon's separation from employment, Michayro Candelario, People Operations Coordinator for Andela stated, "You will be paid through your last day as stated above on the following pay cycle." However, Plaintiff was not paid her earned commissions earned through the month of July 2022 totaling approximately $46,803 and bonuses up to September 1, 2022.

27.     NYLL §191(c) states in relevant part, "The employer shall furnish a commission salesperson, upon written request, a statement of earnings paid or due and unpaid."

28.     On or about August 31, 2022, while Plaintiff Lennon was still employed at Andela, Plaintiff

7

Lennon sent an email to Anthony Shore of Andela's human resources department requesting payment of her earned commissions for July 2022 and requested a spreadsheet of her earned commissions stating in relevant part, "I did not receive a commissions spreadsheet or any commissions for the month of July that should have hit today…can you send the spreadsheet over?"

29.     On or about September 12, 2022, Plaintiff Lennon sent a second email to Anthony Shore requesting payment of her commissions for July 2022 and for a commissions statement.  To date, Anthony Shore failed to respond to Plaintiff Lennon's emails dated on or about August 31, 2022 and September 12, 2022.

30.     Because Andela failed to respond to Plaintiff Lennon's inquiry dated on or about August 31, 2022 as to her commissions due to her for the month of July 2022, Plaintiff Lennon followed up by email dated on or about September 12, 2022 to Anthony Shore.

31.     But for Plaintiff Lennon's female sex/gender she would not have been harassed and demeaned in front of her male colleagues or other male employees.

32.     But for Plaintiff Lennon's female sex/gender she would not have been blamed by supervisor Bhagwata for delays in completing assignments that were caused by other male employee(s).

33.     But for Plaintiff Lennon's female sex/gender, supervisor Bhagwata would not have taken assignments away from her by stating to other male colleagues, "Jackie is clearly not interested or too busy to handle this. Can you guys jump on this?"

34.     Supervisor Bhagwata did not ask other male employees to "…jump on this" when the male employee who caused an assignment delay failed to show up to work.  Instead, supervisor Bhagwata told Plaintiff Lennon in front of her male colleagues, "let's take our jobs seriously."

8

35.     As a result of supervisor Bhagwata's harassment and demeaning treatment of Plaintiff Lennon and Defendant's willful withholding of Plaintiff Lennon's earned wages and interference with her business opportunities, Plaintiff Lennon suffered mental anguish, anxiety, stress, lack of sleep and loss of enjoyment of life.  These changes were witnessed by her immediate family and friends.

36.     Based upon information and belief, at the time of both Plaintiffs' hire, supervisor Bhagwata provided a lesser salary and bonus rate to Plaintiff Lennon because she was a female Enterprise Client Partner and provided Plaintiff Kuchyt with a significantly higher salary and bonus rate because he was a male Enterprise Client Partner.

37.     But for Plaintiff Lennon's female sex/gender, she would have received the same or equivalent annual salary and annual bonus wage rates as Plaintiff Kuchyt.

Retaliation against Plaintiffs for engaging in protected activity

38.     Plaintiff Kuchyt who had worked in the same position as Plaintiff Lennon as an enterprise client partner was on track for a promotion when Defendant Andela suddenly terminated his employment on or about May 2023.

39.     Defendant by and through Anthony Shore stated to Plaintiff Kuchyt that the reason for his termination was that Plaintiff Kuchyt provided Plaintiff Lennon with information about her commission earnings information which Defendant willfully and unlawfully refused to provide to Plaintiff in violation of NYLL 191(c).

40.     Plaintiff Kuchyt's termination was in retaliation for communicating with Plaintiff Lennon before and after Plaintiff Lennon's termination from employment about her earned July 2022 commissions and her lesser salary and bonus wages than Plaintiff Kuchyt, for which Defendant Andela failed to compensate Plaintiff Lennon to date.

9

41.    Based on the retaliatory and sudden termination of Plaintiff Kuchyt's employment, he suffered mental anguish, stress, anxiety, lack of sleep, and loss of enjoyment of life.  These changes were witnessed by Plaintiff Kuchyt's immediate family and friends

42.    To date, Defendant Andela failed to compensate Plaintiff Kuchyt his commissions and bonuses earned through the date of his last date of employment also in retaliation for his protected activity of communicating with and assisting Plaintiff Lennon with her claims for unpaid commissions; wage differential and discrimination based on her sex/gender.

43.    Plaintiff Kuchyt further suffered mental anguish, stress, anxiety, lack of sleep due to Defendant's sudden retaliatory withholding of his earned wages and interference with his business relationships and opportunities.

44.    The retaliation by Defendant against both Plaintiffs was intended to have an *in terrorem effect* on Plaintiffs and deter reasonable employees from complaining about payment of commissions, bonuses or any other employment practices.

45.    Plaintiff Lennon seeks to recover her unpaid July 2022 commissions and bonuses under the New York State common law claim for breach of contract, or in the alternative under the New York State common law theory of quantum meruit to prevent unjust enrichment.

46.    Plaintiff Lennon seeks to recover her wage differential of $10,000 and liquidated damages of 300% the wage differential pursuant to NYLL 194; back pay, front pay in lieu of reinstatement, compensatory and punitive damages for wrongful discharge based on her sex/gender pursuant to NYS HRL §296 et seq., interest, attorneys fees and costs.

47.    Plaintiff Lennon seeks to recover back pay, compensatory and punitive damages. Attorneys fees and costs for retaliatory and unlawful withholding of Plaintiff Lennon's wages by Defendant because Plaintiff Lennon requested in writing, a statement of earned commissions and payment of

10

those earned commissions on or about August 31, 2022 and September 12, 2022 in violation of NYLL §215.

48.    Plaintiff Kuchyt seeks to recover his unpaid commissions and bonuses through the date of his wrongful and retaliatory termination under New York State common law claim for breach of contract, or in the alternative under the New York State common law theory of quantum meruit to prevent unjust enrichment; back pay, front pay in lieu of reinstatement, compensatory and punitive damages, and liquidated damages for retaliation for engaging in protected activities in violation of NYLL §215 and NYS HRL 298 et seq., interest, attorneys fees and costs in amounts to be determined at the time of trial.

**AS and FOR A FIRST CAUSE OF ACTION**
Differential in rate of pay based on protected class status pursuant to NYLL §194
As to Plaintiff Lennon

49.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

50.    NYLL §194 states in relevant part, "No employe with status within one or more protected class ... shall be paid a wage rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work on a job the performance of which requires equal skill, effort and responsibility which is performed under similar working conditions, or (b) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions ..."

51.    Within the meaning of NYLL §194, Plaintiff Lennon was a member of a protected workers based on her female sex/gender and performed equal work on a job, the performance of which required equal skill, effort and responsibility, and which was performed under similar working conditions at the same job establishment. However, as alleged throughout this complaint, Plaintiff Lennon was paid $10,000 less in annual salary and approximately $16,000 in annual bonuses than her male counterpart, Plaintiff Kuchyt with equivalent or similar experience and education.

11

Case 1:23-cv-07154 Document 1 Filed 08/14/23 Page 19 of 45

52.     As alleged throughout this complaint, both Plaintiffs started employment with Defendant on or about March 29, 2021 as commission salespersons with the title of Enterprise Client Partner and reported to supervisor Bhagwata.

53.     As alleged throughout this complaint, at all relevant times Defendant was aware that Plaintiff Lennon was a female Enterprise Client Partner and Plaintiff Kuchyt was a male Enterprise Client Partner and hired to start employment on or about March 29, 2021 to perform the same work duties and procure, maintain and serve similarly situated clientele, e.g. publicly traded companies.

54.     As alleged throughout this Complaint, but for Plaintiff Lennon's female sex/gender, she would have received the same or equivalent wage payments in annual salary and bonuses.

55.     As alleged throughout this Complaint, both Plaintiffs had similar experience and education and worked under the same terms and conditions of employment or performed the same duties and procured similar clients including publicly traded companies of the Defendant Andela.

56.     As alleged throughout this complaint, at all relevant times of Plaintiff Kuchyt's employment, he was paid a higher annual salary of approximately $160,000 versus Plaintiff Lennon's annual salary of approximately $150,000 and an annual bonus rate of $40,000 versus Plaintiff Lennon's annual bonus rate of $26,000.

57.     As alleged throughout this Complaint, based upon information and belief, supervisor Bhagwata determined or had significant influence in determining both Plaintiffs' salary and bonus rates at the time of their respective hire which was on or about March 29, 2021.

58.     As alleged throughout this complaint, based upon information and belief, supervisor Bhagwata provided a significantly lesser salary and bonus rate to Plaintiff Lennon than Plaintiff Kuchyt, a male Enterprise Client Partner because Plaintiff was a female Enterprise

12

Client Partner.

59.     As alleged throughout this Complaint, supervisor Bhagwata regularly made derogatory statements based on female tropes of passiveness, timidness, being weak willed, lacking qualifications or lacking ambition about Plaintiff Lennon's work performance in front of her male peers.

60.     As alleged throughout this Complaint Defendant Andela is strictly liable for the misconduct of its officers and supervisors.

61.     Based upon information and belief, Defendant and supervisor Bhagwata willfully paid Plaintiff Lennon a lesser wage / salary rate because she was a female employee than her male counterpart Plaintiff Kuchyt even though both Plaintiffs possessed similar experience and education and performed the same duties and serviced the similar clients.

62.     Based on the foregoing, Plaintiff Lennon seeks to recover the salary differential of approximately $10,000; and bonus differential of approximately $16,000; and liquidated damages of 300% of salary and bonus wage differentials between Plaintiff Lennon and Plaintiff Kuchyt; interest, attorneys fees and costs in amounts to be determined at the time of trial.

### AS AND FOR A SECOND CAUSE OF ACTION
Discrimination, Harassment and Hostile Work Environment Based on Plaintiff Lennon's
sex/gender in violation of NYS HRL §296

63.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

64.     NYS Exec Law §296 prohibits discrimination by employers in compensation or in terms, conditions or privileges of employment and harassment of the employee based on sex or gender and/or for "oppos[ing] any practices forbidden under this article or because the individual has filed a complaint, testified, or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive... Such harassment is an unlawful

discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories."

65.     Based on NYS HRL §296, an act of harassment does not need to be severe and/or pervasive if the employee was subjected to inferior terms and conditions of employment due to her sex/gender.

66.     Effective on or about October 11, 2019, the "severe or pervasive" requirement was eliminated. *See McHenry v. Fox News Network, LLC* 510 F. Supp. 3d 51, 66 (SDNY 2020) Plaintiff need only show that the she was subjected to unwanted gender based conduct. Id.

67.     Plaintiff need only show that she was subjected to unwanted gender based conduct. Id.

68.     Under the NYS HRL, the employer is strictly liable for the harassment by its supervisors or managers. *See, Zarzewska v. New School*, 14 NY3d 469, 479-81 (NY 2010); *Chauhan v. MM Hotel Mgmt. LLC* 2019 WL 618006 at *6 ftnte 7 (EDNY Nov. 18, 2019).

69.     As alleged throughout this Complaint, Plaintiff Lennon was subjected to an inferior pay rate than her male counterpart, Plaintiff Kuchyt for the same performance of work and was additionally subjected to a hostile work environment by her supervisor Bhagwata and then constructively discharged or forced to terminate her employment with Andela due to harassment by Bhagwata.

70.     As alleged throughout this complaint, supervisor Bhagwata demeaned and baselessly accused Plaintiff Lennon of failing to perform her duties to his standards in front of other male employees.

71.     For instance, during the relevant time period of Plaintiff Lennon's employment, one instant messaging string involved Bruce Tizes and Dana Wolfe. Mr. Bhagwata stated, "I don't want to operate in JST (Jackie Standard Time) Let's move quickly." Dana Wolfe replied in Plaintiff Lennon's defense, "…we have a lot of A/R issues… I don't think this is just a CP issue."

72.     Mr. Bhagwata stated in another message string to Dana Wolfe and Jason, "Jackie is clearly

14

not interested or too busy to handle this. Can you guys jump on this?" Dana Wolfe replied in defense of Plaintiff Lennon again, "Jackie and I have connected every day during the offsite on this – she's fully engaged with both myself and Jason, and myself with Bruce you both…"

73. Another message string by Mr. Bhagwata started, "Why are you entering late churn?" Ms. Lennon replied in relevant part, "It's entered for today because the engineer cannot be located. He hasn't been going to work and the people team and Geoffrey and I cannot get ahold of him." Mr. Bhagwata continued to blame Ms. Lennon for the lack of work performance by other male employee(s) and despite the fact it was not within her control, Bhagwata baslessly chastised, "You are talking as if all of this is new to you. This nonsense needs to stop. Let's take our jobs seriously Very disappointed."

74. The HRL §296 further prohibits as discrimination, "(h) For any employer … to subject any individual to harassment because of an individual's …sex… or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. The fact that such individual did not make a complaint about the harassment to such employer…shall not be determinative of whether such employer…shall be liable."

75. As alleged throughout this complaint, supervisor Bhagwata regularly provided negative feedback to Plaintiff Lennon in front of her male colleagues and was harassed because she was a female employee. The harassment and hostile work environment resulted in assignments being taken away from Plaintiff Lennon and given to male colleagues as well as her ultimate constructive

15

discharge.

76.      As alleged throughout, as a result of supervisor Bhagwata's repeated harassment and personal attacks in front of male employees Plaintiff Lennon suffered mental anguish, anxiety, stress, lack of sleep, and a loss of enjoyment of life.

77.      For the hostile work environment that was created and maintained by supervisor Bhagwata, and for her constructive discharge, Plaintiff Lennon seeks back pay, compensatory including mental anguish / garden variety emotional distress and punitive damages, interest, attorneys fees and costs in amounts to be determined at the time of trial.

## AS AND FOR A THIRD CAUSE OF ACTION
Discrimination and Constructive Discharge based on Plaintiff Lennon's sex / gender in violation of NYS HRL §296

78.      Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

79.      The New York State Human Rights Law §296 states in relevant part, "1. It shall be an unlawful discriminatory practice: (a) For an employer…because of an individual's …sex…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

80.      As alleged throughout this Complaint, based upon NYS HRL §296, an act of harassment does not need to be severe and/or pervasive if the employee was subjected to inferior terms and conditions of employment due to her sex/gender.

81.      As alleged throughout this Complaint, effective on or about October 11, 2019, the "severe or pervasive" requirement was eliminated.  *See McHenry v. Fox News Network, LLC* 510 F. Supp. 3d 51, 66 (SDNY 2020).

82.      As alleged throughout this complaint, Plaintiff Lennon was in a protected class based on her female sex / gender.

16

83.     As alleged throughout this complaint, supervisor Bhagwata caused Plaintiff Lennon to terminate her employment with Defendant Andela by demeaning and harassing Plaintiff Lennon with derogatory comments about her work performance in the presence of other male employees based on female stereotypes that she was incapable of "handl[ing]" her duties and giving Plaintiff Lennon's assignments to male colleagues, stating, "Can you guys jump on this?" and not capable of working aggressively by stating to other employees, "I don't want to operate in JST (Jackie Standard Time)  Let's move quickly."

84.     As alleged throughout this complaint, supervisor Bhagwata also  chastised Plaintiff Lennon stating, "This nonsense needs to stop.  Let's take our jobs seriously  Very disappointed" even after Plaintiff Lennon informed supervisor Bhagwata that an assignment was late due to a male employee team member who failed to appear at work and human resources was unable to contact him.

85.     As alleged throughout his complaint, Supervisor Bhagwata's statements were derogatory narratives that Plaintiff was passive, weak willed, unmotivated, and less qualified or capable than her male counterparts.

86.     Based upon supervisor Bhagwata's negative, discriminatory and baseless evaluations of Plaintiff Lennon, Plaintiff Lennon was coerced to quit her employment.

87.     As alleged throughout this Complaint, but for Plaintiff Lennon's female sex, she would not have received negative evaluations, deprived of work opportunities, constructively discharged and paid her earned commissions and bonuses.

88.     As alleged throughout this Complaint, Plaintiff Lennon suffered mental anguish, anxiety, stress, loss of sleep, and a loss of enjoyment of life.

89.     Plaintiff Lennon seeks back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages, attorneys fees and costs

in amounts to be determined at the time of trial.

### AS AND FOR A FOURTH CAUSE OF ACTION

Retaliation in violation of NYLL §215 against both Plaintiffs

90.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

91.     NYLL §215 states in relevant part, "1.   (a)  No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee … (vi) because such employee has otherwise exercised rights protected under this chapter…"

92.     NYLL §194(4)(a) states in relevant part, "No employer shall prohibit an employee from inquiring about, discussing, or disclosing the wages of such employee or another employee."

93.     As alleged throughout this Complaint, Plaintiff Kuchyt was terminated in retaliation for communicating with Plaintiff Lennon before and after her termination by having provided information about Plaintiff Lennon's unpaid July 2022 commissions, his higher bonus rate, higher salary rate and the harassment she suffered by her supervisor Bhagwata.

94.     As alleged throughout this Complaint, Defendant Andela willfully and unlawfully withheld commissions and bonus earnings up to and including the date of his termination on or about May 2023 in retaliation for his protected activity of assisting Plaintiff Lennon with obtaining information about her commission earnings and her claims for wage differentials in her annual salary and bonuses.

95.     As alleged throughout this complaint, Defendant Andela was required to provide a written statement of earned commissions to Plaintiff Lennon based on her written requests via email on or about August 31, 2022 and September 12, 2022.

96.     As alleged throughout this complaint, Plaintiff Kuchyt was on track for a promotion at the time he was suddenly terminated from his employment.

97.     But for Plaintiff Kuchyt's engagement in protected activities to assist Plaintiff Lennon's engagement of protected activities to inquire about her wages and complaints about unpaid commission wages, Plaintiff Kuchyt would not have been terminated from his employment.

98.     As alleged throughout this Complaint Plaintiff Kuchyt's communications with Plaintiff Lennon about her commissions earnings were due to Defendant Andela's failure to provide Plaintiff Lennon with a statement of her commission earnings in violation of NYLL 191(c) which requires employers to provide a statement of commission earnings upon written request.

99.     As alleged throughout this Complaint, Plaintiff Lennon requested a statement of her commission earnings for July 2022 and payment of those earned commissions by email dated August 31, 2022 and September 12, 2022 to Anthony Shore of Defendant's human resources department.  To date, neither Anthony Shore nor Defendant Andela have provided a statement and/or payment of Plaintiff Lennon's commission earnings for July 2022.

100.    In retaliation for Plaintiff Lennon's requests for a statement of her commissions earned, and requests for payments of her earned commissions, Defendant Andela unlawfully withheld her commission earnings in an amount to be determined at the time of trial.

101.    In retaliation for Plaintiff Kuchyt's assistance to Plaintiff Lennon's protected activities, Defendant willy and unlawfully withheld Plaintiff Kuchyt's commission and bonus wages.

102.    Defendant's retaliation would deter reasonable employees from complaining about payment of commissions, bonuses or any other employment practices.

103.    Plaintiffs seek to recover unpaid commissions, bonuses, salary, back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages, interest, attorneys fees and costs in amounts to be determined at the time of trial.

19

## AS AND FOR A FIFTH CAUSE OF ACTION

Retaliation against Plaintiff Kuchyt in violation of NYS HRL §296

104.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

105.    The HRL§ 296 further prohibits retaliation and states in relevant part, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

106.    The HRL §296 further prohibits as discrimination, "(e) For any employer, …to discharge …or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

107.    The HRL §296 further prohibits as discrimination, "(h) For any employer … to subject any individual to harassment because of an individual's …sex… or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.  The fact that such individual did not make a complaint about the harassment to such employer…shall not be determinative of whether such employer…shall be liable."

108.    As alleged throughout this complaint, Plaintiff Kuchyt was terminated in retaliation for communicating with and otherwise assisting Plaintiff Lennon in her claims against Andela concerning her unpaid commissions, lesser salary and bonuses for similar work performed by her

20

male counterparts, hostile work environment and sexual harassment by supervisor Bhagwata.

109.    As alleged throughout this complaint Plaintiff Kuchyt was on track for a promotion when he was terminated from his employment.

110.    Defendant's acts of retaliation against Plaintiff Kuchyt was intended to have an in terrorem impact on him and to deter other reasonable employees from complaining about Defendant's employment practices that Plaintiff in good faith believed were unlawful.

111.    As alleged throughout this complaint, but for Plaintiff Kuchyt's protected activities in assisting Plaintiff Lennon in engaging in protected activities concerning the terms and conditions of her employment, Plaintiff Kuchyt would not have been terminated.

112.    Plaintiff Kuchyt seeks back pay, front pay in lieu of reinstatement compensatory including mental anguish / garden variety emotional distress and punitive damages, interest, attorneys fees and costs in amounts to be determined at the time of trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
Discriminatory and constructive discharge and hostile work environment in violation of
NYC HRL §8-107

113.    Plaintiffs repeat and reallege each and every previous allegation as if fully set herein.

114.    The NYC HRL 8-107 (1) states in relevant part, "It shall be an unlawful practice: (a) for an employer or an employee or agent thereof, because of the actual or perceived ….gender … of any person: …(2) To refused to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

115.    As alleged throughout this complaint, Plaintiff Lennon alleged discrimination and harassment based on her female sex / gender.

116.    But for Plaintiff Lennon's female sex / gender, Plaintiff Lennon would not have been

Case 1:23-cv-07154    Document 1    Filed 08/14/23    Page 29 of 45

harassed, constructively discharged and lost work opportunities as alleged throughout this complaint.

117. But for Plaintiff Lennon's female sex / gender, Plaintiffs' supervisor Bhagwata would not have created and maintained a hostile work environment, harassed and discriminated against Plaintiff Lennon that deprived her of work opportunities, unpaid commissions and bonuses and caused her mental anguish as alleged throughout this Complaint.

118. Plaintiff Lennon seeks back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages, and pre and post judgment interest, attorneys fees and costs.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
Retaliation and Discrimination in violation of NYC HRL §8-107

119. Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

120. The NYC HRL 8-107(7) states in relevant part, "It shall be an unlawful discriminatory practice for any person engaged in activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter…The retaliation or discrimination complained of in this subdivision need not result in an ultimate action with respect to employment, …or in a materially adverse change in the terms and conditions of employment…provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

121. As alleged throughout this complaint, Plaintiff Lennon was retaliated against for complaining about the harassment and discrimination she suffered under her supervisor Bhagwata which resulted in her being deprived of her earned commissions and bonuses and work opportunities.

122. As alleged throughout this complaint, Plaintiff Kuchyt was retaliated against by Defendants with the termination of his employment and willful failure to pay his earned commissions and bonuses for engaging in protected activity or assisting Plaintiff Lennon with her

22

harassment, discrimination and hostile work environment claims.

123.    As alleged throughout this complaint, Plaintiff Kuchyt suffered mental anguish as a result of the retaliation or termination of his employment and Defendant's willful failure to pay his earned commissions and bonuses.

124.    These acts of retaliation by Defendant against Plaintiffs were intended to have an *in terrorem* effect on them and to deter other reasonable employees from complaining about Defendant's employment practices that each of Plaintiffs believed in good faith were unlawful.

125.    Both Plaintiffs seek to recover back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages, attorneys fees, costs and interest.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### Breach of Contract / Commission Agreement

126.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

127.    NYLL §191(c) states in relevant part, "A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once a month in which they are earned; …bonuses …may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan.

128.    As alleged throughout this complaint, both Plaintiffs were commission salespersons and their compensation plans included an annual salary, commissions and bonuses.

129.    Under New York State common law, a breach of contract requires a showing of: a) formation of a contract between the parties; b) performance by the plaintiff; c) the defendant's failure to perform; and d) damage to plaintiff.  *See e.g. Second Source Funding LLC v. Yellowstone Capital, LLC* 144 AD3d 445, 445 (1st Dept., 2016)  Failure by a party to a contract to perform

23

results in a breach of contract and an action may be maintained for damages. Id.

130.    As alleged throughout this complaint in an offer letter dated on or about March 4, 2021, Defendants agreed to pay Plaintiff Lennon 5% commissions on "net revenue for closed/won deals you originate."

131.    In an offer letter dated on or about February 19, 2021, Defendant agreed to pay Plaintiff Kuchyt 5% commissions "of net revenue for closed/won deals you originate."

132.    As alleged throughout this Complaint, both Plaintiffs were offered and accepted at the time of hire on or about March 29, 2023, commission wages of 5% on client contracts that they closed / originated. Commission wages were in addition to Plaintiffs' annual salaries and bonuses.

133.    As alleged throughout this complaint, Plaintiff Lennon closed deals throughout July 2022.

134.    Notwithstanding, as alleged throughout this complaint, to date, Plaintiff Lennon was not paid her July 2022 earned commissions and quarterly bonuses.

135.    As alleged throughout this complaint, Plaintiff Lennon requested in writing via emails Anthony Shore dated on or about August 31, 2022 and September 12, 2022 for a statement of her earned commissions and for payment of her unpaid commissions through July 2022.

136.    As alleged throughout this complaint, Plaintiff Kuchyt was on track for a promotion and closed deals up to and including May 2023.

137.    Notwithstanding, as alleged throughout this complaint, to date, Plaintiff Kuchyt was not paid his commissions earned up to and including the month of May 2023 and his quarterly bonuses.

138.    The non-payment of Plaintiffs' respective earned commissions and bonuses were in breach of the commission and bonus agreements contained in their respective offer letters.

139.    As alleged throughout this Complaint Plaintiff Lennon was not paid her quarterly bonuses of $4,000 ($16,000 annual bonus) up to and including the time of their respective termination from

24

employment.

140.    As alleged throughout this Complaint Plaintiff Kuchyt was not paid his quarterly bonuses of $10,000 ($40,000 annual bonus) up to and including the time of their respective termination from employment.

141.    Based on Defendant's failure to perform or otherwise pay commissions and bonuses to each of Plaintiffs pursuant to their respective offer letters of employment, Plaintiffs each seek recovery of their earned commissions and bonuses in amounts to be determined at the time of trial plus interest and incidental and consequential damages.

## AS AND FOR A NINTH CAUSE OF ACTION
In the alternative, Plaintiffs' Claims under NYS common law theory of Quantum Meruit to prevent Unjust Enrichment

142.    Plaintiffs repeat and reallege each and every previous as if fully set forth herein.

143.    In the alternative of Plaintiffs' breach of contract claims, should the court find that there was no enforceable agreement by Defendants to pay Plaintiffs commissions and bonuses, Plaintiffs seek to recover these wages under the common law theory of Quantum Meruit to avoid unjust enrichment.

144.    As alleged throughout this Complaint, Defendant Andela failed to pay either of Plaintiffs their earned commissions and bonuses due and owing to them at the time of their respective terminations from employment.

145.    The common law theory of "quantum meruit to prevent unjust enrichment" requires allegations that Plaintiff "performed valuable services in good faith, …that the services were rendered with an expectation of compensation, and that they were accepted by defendants." *See, Eastern Consol. Props., Inc. v. Waterbridge Capital LLC*, 149 AD3d 444, 444 (1st Dept., 2017)

146.    Where the validity of an agreement is at issue, a cause of action under the theory of

25

quantum meruit to avoid unjust enrichment a claim of quantum meruit to avoid unjust enrichment is proper. *See, Eastern Consol. Props., Inc. v. Waterbridge Capital LLC*, 149 AD3d 444, 445 (1st Dept. 2017)

147.    A claim of unjust enrichment is available where a defendant has neither breached a contract nor committed a tort but an equitable obligation runs from the defendant to plaintiff.

148.    A prima facie claim of unjust enrichment requires a showing that: a) Defendant was enriched at Plaintiff's expense; b) there was a relationship that caused reliance or inducement; and c) it is against equity and good conscience to permit the Defendant to retain what Plaintiff seeks to recover.

149.    As alleged throughout this Complaint, Plaintiffs relied on their respective employment offer letters to work towards an annual salary, commissions and bonuses and that Defendants would pay Plaintiffs 5% for earned commissions and annual bonuses of appx. $24,000 to Plaintiff Lennon and $40,000 to Plaintff Kuchyt that were to be respectively paid in equal quarterly amounts.

150.    As alleged throughout this complaint, both Plaintiffs performed valuable services, specifically procuring and maintaining client contracts for Defendant, and these services were performed by Plaintiffs in expectation of commissions and bonuses.

151.    As alleged throughout this complaint, both Plaintiffs relied on written representations by Defendant based on their employer – employee relationship of quarterly bonuses and 5% commissions.

152.    As alleged throughout this complaint, the services or contracts procured by Plaintiffs respectively were accepted by Defendant from which they profited millions of dollars.

153.    As alleged throughout this complaint, Plaintiff Kuchyt was on track for a promotion at the

26

time of his termination and also willfully and unlawfully withheld payment of his commission and bonus wages.

154. As alleged throughout this complaint, Defendant willfully and unlawfully withheld payment of her bonuses, commissions and a statement of her earnings even after Plaintiff Lennon made written requests in violation of NYLL 191(c).

155. It would be manifestly unjust to permit Defendant to retain their profits without compensation to Plaintiffs who contributed time and services in anticipation of commission and bonus wages in good faith reliance on their respective employment offer letters at the time of hire and thereafter.

156. Accordingly, Plaintiffs each seek to recover their respective earned quarterly bonuses and commissions in amounts to be determined at the time of trial, with statutory interest.

**WHEREFORE** Plaintiffs each pray for the entry of an order and judgment against the named Defendant Andela, for the following relief:

A. Issuance of an order granting judgment in favor of Plaintiff Lennon for Defendant's violation of NYLL §194 for differential in wage payments based on Plaintiff Lennon's sex/gender under the First Cause of Action; and

B. Award damages to Plaintiff Lennon to recover her wage differential and liquidated damages of 300% of the wage differentials, interest, attorneys fees and costs pursuant to NYLL §194 et seq.; and

C. Issuance of an order granting judgment in favor of Plaintiff Lennon for Defendant's liability under NYS HRL §296 under the Second and cause of action for discrimination, constructive discharge and hostile work environment based on her sex or gender; and

D. Award damages to Plaintiff Lennon for mental anguish suffered as a result of the sex based harassment, discrimination and hostile work environment by Defendants.

Case 1:23-cv-07154 Document 1 Filed 08/14/23 Page 35 of 45

**E.**     Award Plaintiff Lennon damages for violations of NYS HRL §296 including: back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages including but not limited mental anguish / garden variety emotional distress damages, and pre and post judgment interest; and

**F.**     Issuance of an order granting judgment in favor of both Plaintiffs for Defendant's retaliation against both Plaintiffs for engaging in protected activity in violation of NYLL §215 under the Third Cause of Action and in favor of Plaintiff Kuchyt  for the retaliation against him in violation of NYS HRL §296 under the Fourth Cause of Action; and

**G.**     Award both Plaintiffs back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages, interest, attorneys fees and costs for retaliation they suffered in violation of NYLL §215 and the aforementioned damages to Plaintiff Kuchyt for the retaliation he suffered in violation of NYS HRL §296 in the Fifth Cause of Action; and

**H.**     Issuance of an order granting judgment in favor of Plaintiff for Defendants' liability under NYC HRL §8-107 under the Sixth and Seventh causes of action for discrimination, hostile work environment based on her sex or gender and retaliation; and

**I.**     Award Plaintiffs damages for violations of NYC HRL §8-107 including:  back pay, front pay in lieu of reinstatement, compensatory including mental anguish / garden variety emotional distress and punitive damages, and pre and post judgment interest on their Sixth through Seventh causes of action for discrimination based on sex/gender, hostile work environment and retaliation respectively; and

**J.**     Issuance of an order and judgment in favor of both Plaintiffs that Defendant breached its commission and bonus compensation agreement or plan by failing to account for and make such

28

Case 1:23-cv-07154   Document 1   Filed 08/14/23   Page 36 of 45

payments to the respective Plaintiffs under the Eighth Cause of Action; and

**K.**      Award Plaintiffs their contractual damages or their respective unpaid commissions and bonuses earned through the date of their termination from employment, incidental and consequential damages; OR

**L.**      In the alternative, declare and award that Defendant shall pay Plaintiffs their respective earned commissions and bonuses under the common law theory of Quantum meruit to prevent unjust enrichment and attendant damages in their Ninth Cause of Action; and

**M.**      Award statutory liquidated damages, compensatory including mental anguish / garden variety emotional distress and punitive damages; interest, attorneys fees and costs for Plaintiff's First through Seventh Causes of Action; and

**N.**      Award contractual damages, incidental and consequential damages and interest on their Eighth Cause of Action based on common law breach of contract or in the alternative, equitable damages under quantum meruit to avoid unjust enrichment and interest on their Ninth Cause of Action; and

**O.**      Any and all other further relief as this Court shall deem just and proper.

Dated:   New York, NY
          July 11, 2023

                         Nisar Law Group, PC
                         Attorneys for Plaintiffs


                         _____

          BY:      Susan Ghim
                   60 East 42nd Street, Suite 4600
                   New York, NY 10165
                   Ph. 646-889-1011
                   Email: SGhim@Nisarlaw.com

## ATTORNEY VERIFICATION

State of New York   )

                      ) ss:

County of New York  )

       I, the undersigned attorney duly admitted to practice law in New York State, affirm under penalty of perjury and pursuant to CPLR § 2106 as follows:

1.     The Affiant is Of Counsel to Nisar Law Group, PC, Attorneys for Plaintiff Jackie Lennon.

2.     The Affiant has read the foregoing Verified Complaint and knows the contents thereof; that the same are true to Affiant's knowledge except as to those matters therein stated to be alleged based upon information and belief, and as to those matters, I believe them to be true. The source of Affiant's knowledge and information consists of records and information contained in the client's file relating to this Verified Complaint in the office of the attorneys for Plaintiff Lennon.

3.     This verification is made by the Affiant pursuant to CPLR 3020(d)(3) because the said Plaintiff is not a resident of the County of New York, the county in which the undersigned attorneys maintain a law offices.

Dated: New York, New York
       July 11, 2023

                             Nisar Law Group

BY:    Susan Ghim, Of Counsel
        60 East 42nd Street, Suite 4600
        New York, NY 10165
        (646) 889-1011
        Email: SGhim@Nisarlaw.com

30

## ATTORNEY VERIFICATION

State of New York      )
                       ) ss:
County of New York   )

I, the undersigned attorney duly admitted to practice law in New York State, affirm under penalty of perjury and pursuant to CPLR § 2106 as follows:

1.      The Affiant is Of Counsel to Nisar Law Group, PC, Attorneys for Plaintiff Adam Kuchyt.

2.      The Affiant has read the foregoing Verified Complaint and knows the contents thereof; that the same are true to Affiant's knowledge except as to those matters therein stated to be alleged based upon information and belief, and as to those matters, I believe them to be true.  The source of Affiant's knowledge and information consists of records and information contained in the client's file relating to this Verified Complaint in the office of the attorneys for Plaintiff Kuchyt.

3.      This verification is made by the Affiant pursuant to CPLR 3020(d)(3) because the said Plaintiff is not a resident of the County of New York, the county in which the undersigned attorneys maintain a law offices.

Dated: New York, New York
        July 11, 2023

Nisar Law Group

BY:     Susan Ghim, Of Counsel
        60 East 42nd Street, Suite 4600
        New York, NY 10165
        (646) 889-1011
        Email: SGhim@Nisarlaw.com

31

Case 1:23-cv-07154   Document 1   Filed 08/14/23   Page 39 of 45

**INDEX NO.:**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

Jackie Lennon and Adam Kuchyt,

                         Plaintiffs,

          -v-

Andela Inc.,

                         Defendants.

-------------------------------------------------------------------x

## SUMMONS AND VERIFIED COMPLAINT

---

Nisar Law Group, PC
Attorneys for Plaintiffs
60 East 42nd Street, Suite 4600
New York, NY 10165
Main Phone: (212) 600-9534

---

      I, the undersigned attorney certify that the foregoing summons and verified complaint comply with Section 130-1.1-a of the rules of the Chief Administrator (22 NYCRR) Signature Pursuant to URC 130.1-1A

_Susan Ghim_
Susan Ghim, Of Counsel

Form 27 - AFFIDAVIT OF SERVICE



P9623471

**NISAR LAW GROUP, P.C**   Catherine Badia
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

| | |
|---|---|
| JACKIE LENNON, ETAL | |
| PLAINTIFF | Index No. **156948/2023** |
| - vs - | Date Filed |
| | Office No. |
| ANDELA INC. | Court Date. |
| DEFENDANT | |

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**      :SS:

**ZANEKEE POW** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York. That on the **25TH** day of **JULY, 2023 2:19PM** at
**ATTN: JEREMY JOHNSON, CEO**
**580 FIFTH AVENUE**
**SUITE 820**
**NEW YORK NY 10036**
I served a true copy of the **ATTORNEY'S VERIFICATION, SUMMONS AND VERIFIED COMPLAINT** upon **ANDELA INC.** the **DEFENDANT** therein named by delivering to, and leaving personally with **LISA L (REFUSED FULL NAME), MANAGER/MANAGING AGENT,** who provided verbal confirmation that he or she is authorized to accept by appointment or law to receive service on behalf of the **DEFENDANT.**

Deponent describes the person served as aforesaid to the best of deponent's ability at the time and circumstances of the service as follows:

SEX: **FEMALE** COLOR: **ASIAN** HAIR: **BROWN**

APP.AGE: **40** APP. HT: **5'2** APP. WT: **125**

OTHER IDENTIFYING FEATURES

Sworn to before me this
26TH day of JULY, 2023

SELENA INES ADAMS
Notary Public, State of New York
No. 01AD6365042
Qualified in QUEENS COUNTY
Commission Expires 09/25/2025

ZANEKEE POW DCA LIC #2025377
Lexitas
1235 BROADWAY 2ND FLOOR
NEW YORK, NY 10001
Reference No: 3-NLGPC-9623471

**2a**

=================================================================

Index No. 156948/2023

SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

=================================================================

JACKIE LENNON, ETAL

                           PLAINTIFF

       - against -

ANDELA INC.

                        DEFENDANT
=================================================================

ATTORNEY'S VERIFICATION, SUMMONS AND VERIFIED COMPLAINT

=================================================================

NISAR LAW GROUP, P.C

60 E. 42ND STREET, ROOM 4600

NEW YORK, NY 10165

212 600-9534

Form 27 - AFFIDAVIT OF SERVICE



P9623471

**NISAR LAW GROUP, P.C**   Catherine Badia
SUPREME COURT NEW YORK COUNTY STATE OF NEW YORK

| | |
|---|---|
| JACKIE LENNON, ETAL | |
| | PLAINTIFF |
| - vs - | |
| ANDELA INC. | |
| | DEFENDANT |

Index No. **156948/2023**
Date Filed
Office No.
Court Date.

STATE OF **NEW YORK**, COUNTY OF **NEW YORK**    :SS:

**ZANEKEE POW** being duly sworn, deposes and says; I am over 18 years of age, not a party to this action, and reside in the State of New York. That on the **25TH** day of **JULY, 2023 2:19PM** at
**ATTN: JEREMY JOHNSON, CEO**
**580 FIFTH AVENUE**
**SUITE 820**
**NEW YORK NY 10036**
I served a true copy of the **ATTORNEY'S VERIFICATION, SUMMONS AND VERIFIED COMPLAINT** upon **ANDELA INC.** the **DEFENDANT** therein named by delivering to, and leaving personally with **LISA L (REFUSED FULL NAME), MANAGER/MANAGING AGENT,** who provided verbal confirmation that he or she is authorized to accept by appointment or law to receive service on behalf of the **DEFENDANT.**

Deponent describes the person served as aforesaid to the best of deponent's ability at the time and circumstances of the service as follows:

SEX: **FEMALE** COLOR: **ASIAN** HAIR: **BROWN**

APP.AGE: **40** APP. HT: **5'2** APP. WT: **125**

OTHER IDENTIFYING FEATURES

Sworn to before me this
26TH day of JULY, 2023

SELENA INES ADAMES
Notary Public, State of New York
No. 01AD6365042
Qualified in QUEENS COUNTY
Commission Expires 09/25/2025

ZANEKEE POW DCA LIC #2025377
Lexitas
1235 BROADWAY 2ND FLOOR
NEW YORK, NY 10001
Reference No: 3-NLGPC-9623471

**2a**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKIE LENNON and ADAM KUCHYT,

          Plaintiffs,

v.

ANDELA INC.,

          Defendant.

Case No.:

## <u>DECLARATION OF JEREMY JOHNSON</u>

I, Jeremy Johnson, declare as follows:

1.     I am the Co-Founder and CEO for Defendant Andela Inc ("Andela"). I have personal knowledge of the matters stated herein, including based on my review and knowledge of the contents of relevant business records and files. If called to testify as to these matters, I could and would testify competently. I make this Declaration in support of Andela's Notice of Removal.

2.     Andela is a corporation formed in and pursuant to the laws of Delaware.

3.     Andela operates entirely remotely, with no physical office.

4.     I live in Franklin, Tennessee and am the principal decisionmaker for Andela. I make the final decision for Andela on major matters and direct and control the company's affairs from my home in Tennessee.

5.     In addition to myself, our executive team consists of seven individuals, only one of whom lives in New York. Those executives and their places of residence are as follows:

     a.  Tony Capasso, Chief Business Officer: Austin, Texas

     b.  Jeff Pedersen, Chief Financial Officer: New Rochelle, New York

     c.  Kelly Wenzel, Chief Marketing Officer: Lakewood Ranch, Florida

     d.  Alvaro Oliveira, Chief Network Officer: Sao Paulo, Brazil

DocuSign Envelope ID: C0AD956E-CDDE-4D36-98C7-549397E8A6F5

    e.   Vitri Bhandari, Chief People Officer: North Andover, Massachusetts

    f.   Katharine Holowink, Chief of Staff: Dallas, Texas

    g.   Courtney Machi, VP of Product: Pompano Beach, Florida

6.      From my home in Tennessee, I communicate regularly with these executives via email, video and telephone calls, and text messages for purposes of directing the company and making major decisions.

7.      Andela also has eight Board Members, none of whom live in New York.

8.      From my home in Tennessee, I communicate with Board Members via email, video or telephone call, and text message for purposes of directing the company and making major decisions.

9.      Andela has no regular in-person meetings among its executives or Board Members at any specific or regular physical location.

10.    Andela formerly operated an office at 129 W. 29th St., New York, NY 10036. However, due in part to the COVID-19 pandemic, Andela vacated this office in April 2020 and went fully virtual. The lease for the 129 W. 29th St. office was formally terminated effective December 31, 2021. Andela has no intention of returning to a physical office.

11.    Andela has arranged to receive mail at 580 Fifth Avenue, New York, New York, but has no employees working at that location or any other office in New York.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 10, 2023
       Franklin, Tennessee

                                *Jeremy Johnson*
                                Jeremy Johnson